FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 26, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES,

        Plaintiff - Appellee,

v.

JEFFREY GOEBEL, also known as
Jefferey Goebel, also known as Jeffrey
Reese,

        Defendant - Appellant.

No. 19-2125

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 5:18-CR-02752-KG-1)**

---

Bernadette Sedillo, Assistant Federal Public Defender (Stephen P. McCue,
Federal Public Defender, with her on the briefs), Office of the Federal Public
Defender, Las Cruces, New Mexico, for Appellant.

Aaron O. Jordan, Assistant United States Attorney (John C. Anderson, United
States Attorney, with him on the brief), Office of the United States Attorney, Las
Cruces, New Mexico, for Appellee.

---

Before **TYMKOVICH**, Chief Judge, **SEYMOUR**, and **MORITZ**, Circuit Judges.

---

**TYMKOVICH**, Chief Judge.

---

Jeffrey Goebel was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He filed a motion to suppress, which the district court denied. He pleaded guilty conditioned on his ability to appeal the denial of his motion to suppress.

On appeal, Goebel argues that the district court erred in denying his motion to suppress. He contends the arresting officer lacked reasonable suspicion to detain him, his statements were obtained in violation of the Fifth Amendment, and the district court committed plain error by applying the wrong standard of review to the motion. We reject these arguments, and affirm.

## I. Background

In June 2017, Roswell Police Officer Alex Barleen was on patrol at approximately 2:45 a.m. when he heard a report of a reckless driver. A short time later, he observed a car behind him make an abrupt turn onto another street, which in Officer Barleen's experience is consistent with impaired drivers or people evading law enforcement. Finding the other driver's abrupt turn suspicious, knowing the area to be a "high crime" neighborhood, and having recently heard the report of a reckless driver, Officer Barleen made a U-turn and followed the car, which eventually pulled into the driveway of a residence in the neighborhood.

Officer Barleen pulled over approximately 100 feet from the driveway and monitored the other car. He observed the driver, later identified as Goebel, exit the vehicle, walk past a van parked in the driveway, past the front porch, past a side door, and through a gate into the backyard. As Goebel did so, Officer Barleen drove forward and stopped in the street directly behind Goebel's parked car. He remained there for approximately 10 seconds to get the license plate number. During that time there was no one sitting in the driver's seat of Goebel's car, although there was a front-seat passenger. Officer Barleen observed that there were no lights on in the residence and the van in the driveway had an open side door. He then activated his body camera, and reversed and parked so that he was no longer blocking the driveway.

As Officer Barleen parked, the front-seat passenger stepped out and approached Officer Barleen. Officer Barleen testified that it is unusual for someone to approach his patrol car before first being approached themselves, and that such behavior is sometimes an effort to distract law enforcement officers. Officer Barleen exited his car and spoke to the passenger, who could not tell Officer Barleen the address of the residence they had just parked in front of.

Goebel returned from the backyard and began to open the driver's side door. Officer Barleen ordered him away from the car and directed both Goebel and the front-seat passenger to stand on the sidewalk. Officer Barleen asked them

what they were doing at the residence, and asked Goebel whether he knew the address. Goebel did not know the address, but nevertheless claimed they were there to give a friend, "Joseph," a ride to work and that he had been told to go to the side door when they arrived.

During this conversation, another officer arrived. Officer Barleen left Goebel and the passenger with the other officer and went to talk to the second passenger in Goebel's car. She told Officer Barleen she did not know why they were at the residence, did not know the residents of the home, and did not even know Goebel or the front-seat passenger, whom she said were giving her a ride home. After this conversation, Officer Barleen learned from dispatch that Goebel was on probation and had prior felony convictions.

He then went to the front door of the home and knocked several times before one of the occupants answered. She said she did not know any of the people in front of her house, and that there was no one named Joseph living there. She also said she thought the van door had been closed when she went to bed. She gave Officer Barleen permission to search the van and the backyard.

Officer Barleen then placed Goebel in handcuffs, and told him he was being detained for suspicious activity, possible vehicle burglary, and criminal trespass. Goebel denied any wrongdoing and repeated he was there to pick up a

friend. Goebel was not advised of his *Miranda* rights before this conversation, which lasted less than a minute.

Officer Barleen then searched the van and the backyard. He noticed a gate in the back fence that was slightly open, and eventually found a handgun inside a holster lying on the ground in the middle of the alley. After the handgun was properly secured, Officer Barleen went back to Goebel and read him his *Miranda* rights. Goebel stated that he had been read his rights before and understood them. He denied possessing the handgun, disclaimed any knowledge of it, and admitted to nothing.

Officer Barleen then placed Goebel under arrest and transported him to the police station for booking. After Officer Barleen read Goebel his *Miranda* rights again, Goebel again denied any knowledge of the handgun and said nothing incriminating. At no point during any of these conversations, all of which were recorded, did Officer Barleen raise his voice or make any physical threat.

Goebel subsequently was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He filed a motion to suppress the evidence, arguing Officer Barleen lacked reasonable suspicion to detain him and the gun was discovered in violation of his Fourth Amendment rights. He also argued Officer Barleen obtained statements from him in violation of the Fifth Amendment. The motion was denied except for the suppression of a few of

Goebel's statements made during a one-minute interval in which he was handcuffed but not yet *Mirandized*.

## II. Analysis

Goebel argues the district court erred in finding Officer Barleen had reasonable suspicion to detain him and investigate the late-night stop. He also contends the court should have suppressed additional statements he made before he was given a *Miranda* warning.

On review of a ruling on a motion to suppress, we "view the evidence in the light most favorable to the prevailing party and accept the district court's findings of fact unless they are clearly erroneous." *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017).

### A. *Standard for Reviewing Disputed Evidence*

As a threshold matter, Goebel contends the district court erred in the standard it applied in evaluating the evidence. Both the magistrate judge and the district court recited federal district court decisions from Kansas and the Southern District of Florida for the proposition that on a motion to suppress, the district court must view the evidence *in the light most favorable to the government*.[1]

---

[1] The decisions cited were *United States v. Turner*, No. 13-400500-01-JAR, 2013 WL 5727404, at *9 (D. Kan. Oct. 22, 2013) and *United States v. Ortega*, No. 12-20580-CR-MOORE/TORRES, 2012 WL 12894242, at *4 (S.D. Fla. Dec. 3, 2012).

We agree with Goebel that this is not the correct standard. On a motion to suppress, the district court must assess the credibility of witnesses and determine the weight to give to the evidence presented; the inferences the district court draws from that evidence and testimony are entirely within its discretion. *E.g., United States v. Andrus*, 483 F.3d 711, 716 (10th Cir. 2007); *United States v. Kimoana*, 383 F.3d 1215, 1220 (10th Cir. 2004). The defendant has the burden of showing the Fourth Amendment was implicated, *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994), while the government has the burden of proving its warrantless actions were justified. *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010).

Although the magistrate judge's recommendation and the district court's order cited the wrong standard, Goebel failed to object to the magistrate judge's recommendation on this ground. Rule 59(b)(2) of the Federal Rules of Criminal Procedure provides that the failure to object to a magistrate judge's report and recommendation "waives a party's right to review."

Here, Goebel not only waived this issue by failing to object to that portion of the magistrate judge's report and recommendation, but also failed to address the plain error standard in his opening brief on appeal. The Tenth Circuit has held that "[w]hen an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than

merely forfeited) and decline to review the issue at all—for plain error or otherwise." *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019).

Even if we were to entertain Goebel's argument under a plain error analysis, Goebel cannot show that the district court's error was prejudicial, "meaning that there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Algarate-Valencia*, 550 F.3d 1238, 1242 (10th Cir. 2008) (quotation omitted). Goebel objected to only two proposed facts found by the magistrate judge, both involving the manner in which Officer Barleen observed Goebel driving. Goebel makes no attempt to show how the wrong standard made any difference to the disposition of those factual disputes. Nor does he attempt to show to a reasonable probability that the disposition of those factual disputes would have changed the outcome.

Goebel has not demonstrated plain error.

### B.      *Fourth Amendment*

Goebel argues he was detained without reasonable suspicion and that Officer Barleen's discovery of the gun was therefore the result of a Fourth Amendment violation. We must first determine at what point Goebel was actually detained under the Fourth Amendment. He argues he was detained when Officer Barleen blocked the driveway, and there was no reasonable suspicion at that point to support the detention. A defendant has the burden to prove whether and when

a seizure has occurred. *Carhee*, 27 F.3d at 1496. "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Florida v. Bostick*, 501 U.S. 429, 437 (1991).

Goebel has not carried his burden to show that he was detained when Officer Barleen blocked the driveway. Goebel was not in the car and the driver's seat was empty when Officer Barleen blocked the driveway for approximately ten seconds to get the license plate number. Indeed, Goebel did not return from the backyard until *after* Officer Barleen had backed his patrol car away from the driveway. Because Goebel never even knew that his car had been blocked, Officer Barleen's actions could not possibly have communicated to Goebel that he was not free to leave.

Although Goebel cites numerous decisions concluding that police had detained a suspect within the meaning of the Fourth Amendment by blocking a suspect's car, those cases are distinguishable. *E.g., United States v. See*, 574 F.3d 309, 312 (6th Cir. 2009) (officer detained suspect by blocking car containing several men including defendant); *United States v. Burton*, 441 F.3d 509, 510–11 (7th Cir. 2006) (officers blocked car while defendant was in driver's seat); *United States v. Tuley*, 161 F.3d 513, 514–15 (8th Cir. 1998) (officer blocked truck in

which defendant was sitting); *United States v. Beck*, 602 F.2d 726, 727 (5th Cir. 1979) (officer blocked car while defendant was in driver's seat). The encounters in each of those cases contrast sharply with the instant case, in which there was no encounter at all until after Officer Barleen had reversed and parked his vehicle so that it was no longer blocking the driveway. Neither party disputes that when Officer Barleen instructed Goebel to step away from his car, Goebel had been detained under the Fourth Amendment. *See United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011) (Fourth Amendment seizure occurs when the officer shows his authority and the citizen submits to the assertion of authority). The question, then, is whether at that point the detention was supported by reasonable suspicion. The officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" detention. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The totality of the circumstances must be considered, and neither the officer nor the court need "rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002).

By the time Goebel had returned from the backyard, Officer Barleen had reasonable suspicion of criminal activity. First, the district court noted that it is unusual for a person to walk into the backyard of a house at 3:30 in the morning, especially when that person makes no effort to first approach the door of the house. Although there are innocent explanations for such behavior, it is also

-10-

consistent with trespass or burglary. *See id.* Second, Officer Barleen knew the surrounding area to be a high-crime neighborhood. That is not enough standing alone to establish reasonable suspicion, but courts universally find it weighs in favor of reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Third, when Officer Barleen pulled up to the residence, the passenger exited the vehicle and approached Officer Barleen in what appeared to him to be an effort at distraction. Fourth, the passenger could not tell Officer Barleen the address of the residence in whose driveway they had just parked. Fifth, Officer Barleen could not see any lights on in the residence, and there was a van parked in the driveway with an open side door. Finally, Officer Barleen had earlier observed Goebel's car driving evasively. All of these specific facts, taken together with the rational inferences Officer Barleen drew from them, reasonably warranted Goebel's detention for further investigation.

Goebel argues that his explanation to Officer Barleen for his presence at the residence should have dispelled Officer Barleen's suspicion. He cites no authority for the proposition that an explanation of innocence, no matter how unpersuasive, vitiates reasonable suspicion. Here, Goebel's explanation only heightened Officer Barleen's suspicion. Goebel said he was at the residence to pick up a friend for work, but he never even approached the door of the house. Neither Goebel nor his passengers knew the address of the house nor the name of

the street the house was on. When asked why they did not know the address or even the street, Goebel said that the friend gave directions that did not include an address or any street names. Nor did they know the last name of the friend they were supposedly there to pick up. In short, Goebel's explanation was insufficient to negate Officer Barleen's reasonable suspicion.

Goebel also argues that Officer Barleen violated his Fourth Amendment rights by unreasonably prolonging the detention. A *Terry* stop may only last long enough to address the reason for the stop, and related safety concerns. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). In addressing such an argument, we must "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

The record does not establish that Goebel's detention was unreasonably prolonged. In fact, Officer Barleen accomplished a great deal in a relatively short time. He found Goebel's gun in the alley approximately 17 minutes after detaining Goebel, and during that interval, he (1) questioned the third passenger in Goebel's car, (2) spoke to the homeowner after knocking on the front door twice, (3) communicated with dispatch, (4) searched the van in the driveway, (5) searched the backyard, and (6) searched the alley behind the house. We reject

Goebel's contention that his detention was unreasonably prolonged. *See, e.g.,*

*United States v. Mayville*, 955 F.3d 825, 827 (10th Cir. 2020) ("Because the

traffic stop here did not exceed the time reasonably required to execute tasks

relevant to accomplishing the mission of the stop, Defendant's nineteen minute

roadside detention accorded with the Fourth Amendment's dictates.").

Finally, even assuming that Officer Barleen had committed a Fourth

Amendment violation by ordering Goebel to wait on the sidewalk, Goebel

established no causal link between the violation and the discovery of the gun in

the alley. A defendant must establish a causal link between the violation and the

discovery of the contested evidence. *United States v. Cone*, 868 F.3d 1150, 1154

(10th Cir. 2017). "Evidence will not be suppressed as fruit of the poisonous tree

unless an unlawful search is *at least* the but-for cause of its discovery." *United

States v. Chavira*, 467 F.3d 1286, 1291 (10th Cir. 2006) (emphasis in original).

Before Goebel was detained, Officer Barleen observed him walking into the

backyard of the residence. Based on this observation, Officer Barleen testified

that his routine practice would have involved exactly the same investigative steps

even had he not detained Goebel, which would have led him to the gun in the

alley.

Accordingly, the evidence would not have been suppressed even if Officer

Barleen had violated Goebel's Fourth Amendment rights.

-13-

## C.    *Fifth Amendment*

Goebel also argues that his Fifth Amendment rights were violated at various points during his encounter with Officer Barleen.  Goebel made statements to Officer Barleen at four distinct points: (1) on the sidewalk after Goebel returned from the backyard; (2) on the sidewalk after Officer Barleen had talked to the homeowner, during which time Goebel was handcuffed but not *Mirandized*; (3) in the police car after Officer Barleen had found the gun and advised Goebel of his *Miranda* rights; and (4) at the police station after Goebel had been *Mirandized* a second time.  The second of these is not at issue in this appeal.

Goebel contends that he was in custody for *Miranda* purposes during his first interaction with Officer Barleen.  A *Miranda* warning is required only when a defendant is in custody.  *United States v. Griffin*, 7 F.3d 1512, 1516 (10th Cir. 1993).  Whether a suspect is in custody is an objective determination requiring courts to examine "(1) whether the circumstances demonstrated a police-dominated atmosphere; (2) whether the nature and length of the officers' questioning was accusatory or coercive; and (3) whether the police made [defendant] aware that [he] was free to refrain from answering questions, or to otherwise end the interview." *United States v. Revels*, 510 F.3d 1269, 1275 (10th Cir. 2007).

Here, there was nothing about the exchange on the sidewalk between Goebel and Officer Barleen that converted the conversation into a custodial interrogation. Officer Barleen never raised his voice, nor drew his gun, nor made any sort of threat. The conversation was very brief and took place on a public sidewalk. These facts fit comfortably within Tenth Circuit precedent holding that a *Miranda* advisement is not required. *E.g., United States v. Chee*, 514 F.3d 1106, 1113–14 (10th Cir. 2008) (defendant not in custody during investigation at police station where tone of interview was "calm and conversational"); *United States v. Jones*, 523 F.3d 1235, 1240–41 (10th Cir. 2008) (defendant not in custody during 45-minute conversation while seated in back of police officer's unmarked vehicle).

Concerning Goebel's third and fourth conversations with Officer Barleen, Goebel had been read his *Miranda* rights in each instance, and Goebel voluntarily waived those rights. Other than a conclusory argument, Goebel makes no effort to explain why his waivers were involuntary. The voluntariness of a *Miranda* waiver is judged by several factors, including the suspect's age, intelligence, and education; whether the individual was informed of his rights; the length and nature of the detention and interrogation; and the use or threat of physical force. *United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010). The record reflects that Goebel appeared to be in his late 20s or early 30s and of at least average

intelligence, and that he was completely lucid and gave no sign that he was otherwise impaired. Officer Barleen never raised his voice or physically threatened Goebel. Goebel also had a criminal history; suspects with prior experience in the criminal justice system are more likely to have knowingly waived their *Miranda* rights because "[t]he concepts encompassed by *Miranda* [are] not foreign" to them. *Smith v. Mullin*, 379 F.3d 919, 934 (10th Cir. 2004).

Finally, despite having waived his rights and engaged in conversations with Officer Barleen, Goebel never made any incriminating statement and consistently denied any connection to the gun found in the alley. It therefore appears that even assuming the district court erred in failing to suppress Goebel's statements, any such error was harmless.

## III. Conclusion

For the reasons stated herein, we hold the district court correctly denied Goebel's motion to suppress. Goebel's Fourth and Fifth Amendment rights were not violated, and we therefore **AFFIRM** the district court.