**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 8, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RONALD WILLIAMS TORRES,

Defendant - Appellant.

No. 19-2161

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:18-CR-02748-KG-1)**
_____

Amanda Skinner, Assistant Federal Public Defender, District of New
Mexico, Las Cruces, New Mexico (Steve Sosa, Assistant Federal Public
Defender, District of New Mexico, with her on the briefs), on behalf of the
Defendant-Appellant.

Joni Autrey Stahl, Assistant United States Attorney, Department of Justice,
Las Cruces, New Mexico, on behalf of the Plaintiff-Appellee.

_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **BACHARACH**, Circuit
Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal concerns a traffic stop and pat-down search of Mr.

Ronald Torres. In the pat-down search, police officers found a handgun,

leading to Mr. Torres's conviction for possessing a firearm after a felony conviction. *See* 18 U.S.C. § 922(g)(1). Mr. Torres moved to suppress evidence of the handgun, arguing that the police violated the Fourth Amendment by conducting a traffic stop and pat-down search without reasonable suspicion. The district court denied the motion to suppress.

Mr. Torres appeals, bringing procedural and substantive challenges:

1.    The procedural challenges involve the district court's shifting of the burden of proof, viewing the evidence favorably to the government, and failing to make findings on essential facts.

2.    The substantive challenges involve an alleged lack of reasonable suspicion for a traffic stop and pat-down search.

We reject these challenges.

The district court didn't shift the burden, but did erroneously view the evidence in the light most favorable to the government. This error ultimately proved harmless because the undisputed evidence had justified the traffic stop and pat-down search. The traffic stop was permissible because the police had probable cause from observing a parking violation. When the police approached the vehicle, the smell of burnt marijuana created reasonable suspicion for further questioning. That questioning led to reasonable suspicion that Mr. Torres was armed and dangerous, justifying the pat-down search.

**1. Las Cruces police officers stop an SUV driven by Mr. Torres, conduct a pat-down search, and find a handgun.**

The events began when police surveilled an apartment, which was a suspected site for drug trafficking. As a police officer watched, he saw a white SUV approach the apartment. The SUV stopped, a female passenger exited, and the SUV violated a city ordinance by parking against traffic. The passenger returned to the SUV about a minute later.

After seeing the passenger reenter the SUV, the police officer contacted Officer Nathan Krause and told him to stop the vehicle. Officer Krause saw the SUV; but before he could issue a parking ticket, the SUV was driven away, causing Officer Krause to briefly lose visual contact.

Less than a block away, Officer Krause saw a white SUV and concluded that this was the SUV that had been illegally parked. Officer Krause stopped the SUV and recognized the driver (Mr. Torres): He had been the victim of a shooting months earlier, and police had regarded the earlier shooting as gang-related. Officer Krause not only recognized Mr. Torres from the prior shooting but also knew that he had been convicted of murder.

As Officer Krause approached the SUV, he smelled burnt marijuana and noticed a female passenger. Officer Krause obtained Mr. Torres's license, registration, and medical marijuana card.

3

Other police officers came to help, and one of them asked the female passenger for her identification. The passenger denied having anything to verify her identity and said that she did not know her Social Security number. But she did provide a name and birthdate. In the meantime, Officer Krause confirmed the validity of Mr. Torres's license, registration, and medical marijuana card.

But the officers distrusted the passenger's information and confronted the passenger with their suspicions. In response, she gave her real name and admitted that she had given a fake name, had obtained outstanding warrants, had concealed marijuana in her bra, and had tried to buy heroin after exiting the SUV.

Despite the validity of Mr. Torres's information, he was asked if there would be an issue in letting the police search the vehicle. He responded "No, sir." R. at 264. The police then asked Mr. Torres to get out and patted him down, finding the handgun.

## 2. The district judge denies Mr. Torres's motion to suppress, but erroneously views the evidence in the light most favorable to the government.

Mr. Torres moved to suppress evidence of the handgun, and a magistrate judge recommended denial of the motion based on four conclusions:

1.  The traffic stop did not violate the Fourth Amendment because the officers reasonably suspected a parking violation and the purchase of illegal drugs.

4

2. Reasonable suspicion arose from the smell of burnt marijuana, conduct suggesting a drug purchase, and questionable statements about the passenger's identity.

3. Mr. Torres consented to a search of the SUV.

4. Because the officers reasonably suspected that Mr. Torres was armed and dangerous, the pat-down search did not violate the Fourth Amendment.

Mr. Torres objected to the magistrate judge's recommendations. The district judge

- sustained objections to the recommended factual findings relating to the police's view of the passenger after she had exited the SUV and

- overruled the remaining objections.

In making these rulings, the district judge stated that he was "view[ing] the facts in the light most favorable to the Government." *Id.* at 332.

## 3. The district judge did not commit reversible error when making factual determinations.

In ruling on a motion to suppress, the district judge acts as the factfinder. *United States v. Pappas*, 735 F.2d 1232, 1233 (10th Cir. 1984). Mr. Torres challenges the manner of factfinding, arguing that the district judge

- shifted the burden of proof to Mr. Torres,

- failed to make required factual findings, and

- applied the wrong perspective for viewing the evidence.

5

**A.** **The district judge did not erroneously shift the burden to Mr. Torres.**

Mr. Torres argues that the district judge improperly shifted the burden to Mr. Torres. We disagree. The district judge observed that the government had the ultimate burden to show compliance with the Fourth Amendment. *United States v. Torres*, 2019 WL 1041339, No. 18-cr-2748-KG, at *1 (D. N.M. 2019) (unpublished); *see United States v Shrum*, 908 F.3d 1219, 1229 (10th Cir. 2018) (stating that the government bears the burden of establishing the reasonableness of a warrantless seizure of property). So the district judge did not erroneously shift the burden to Mr. Torres.

**B.** **The district judge did not err by failing to make factual findings.**

Mr. Torres also argues that the district judge erroneously failed to make factual findings. We disagree.

Mr. Torres relies on Federal Rule of Criminal Procedure 12(d), which requires the district court to "state its essential findings" when a motion involves factual issues. Fed. R. Crim. P. 12(d). A finding is essential if it is required for meaningful review. *United States v. Prieto-Villa*, 910 F.2d 601, 610 (9th Cir. 1990). Detailed findings are unnecessary when the district court's explanation shows its reasoning. *United States v. Comosona*, 614 F.2d 695, 697 (10th Cir. 1980).

6

Invoking this rule, Mr. Torres argues that the district judge should have expressly found the facts in three areas:

1. the officers' ability to see what the female passenger did after exiting the SUV,

2. the presence of numerous vehicles and individuals where the traffic stop occurred, and

3. the commission of a moving traffic violation.[1]

We need not consider evidence about the police's observation of the passenger between exiting and reentering the vehicle. Though Mr. Torres has questioned the significance of the passenger's actions after exiting the SUV, we have not relied on those actions. So we may disregard the evidence bearing on the police's ability to see the passenger after she had exited the SUV. Disregarding this evidence moots Mr. Torres's argument that the district judge should have made a finding about the officers' inability to see the passenger.

We may also decline to consider whether Mr. Torres committed a moving traffic violation, for the government did not allege a moving traffic violation. Given the absence of such an allegation, an omission of a factual finding would have been harmless.

---

[1] In his reply brief, Mr. Torres also argues for the first time that the district judge should have expressly determined whether Mr. Torres had engaged in drug trafficking. But Mr. Torres does not explain the need for this determination.

The presence of other vehicles and individuals could affect the reasonableness of suspicion that Officer Krause was stopping the same SUV that he had seen earlier. But the district judge made a finding "that the surveillance and stop [had] occurred in a congested residential area." *United States v. Torres*, 2019 WL 1041339, at *3 (D. N.M. 2019) (unpublished). We thus reject Mr. Torres's argument that the district judge failed to make a finding about the presence of other vehicles and individuals.

**C.    Because the district judge applied the wrong perspective for viewing the evidence, we will disregard his findings on disputed facts.**

Mr. Torres argues in part that the district judge erred in viewing the evidence in the light most favorable to the government. We agree. This perspective on the evidence is used on appeal after a district judge has denied a motion to suppress. *See United States v. Gaines*, 918 F.3d 793, 796 n.3 (10th Cir. 2019); *see also* Part 4(A), below. But this perspective does not apply to the district judge's consideration of the evidence. *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020). Because the district judge made factual findings, he needed to "evenhandedly" consider the evidence. *United States v. Finefrock*, 668 F.2d 1168, 1171 (10th Cir. 1982).

The government concedes the error but argues that it was harmless, focusing on Mr. Torres's objections to the magistrate judge's recommended

8

findings. On harmlessness, the government bears the burden. *United States v. Cristerna-Gonzalez*, 962 F.3d 1253, 1267 (10th Cir. 2020). "A non-constitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

Harmlessness here turns on the impact of the factual disputes. The magistrate judge made factual findings without suggesting that he was viewing the evidence favorably to the government. Mr. Torres objected to some of those factual findings but did not object to others. For those factual findings subject to an objection, the district judge needed to make his own independent determination. 28 U.S.C. § 636(b)(1). Mr. Torres waived an objection to all other recommended findings. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008).[2]

Like Mr. Torres, we question the validity of the district judge's factual determinations because they stemmed from the wrong perspective as to the evidence. Because of that error, we will disregard the district judge's findings on disputed factual matters. *See Abbott v. Perez*, 138 S.

---

[2]     Mr. Torres points out that the magistrate judge did not recommend findings on credibility. But Mr. Torres waived an appellate challenge to this omission by failing to raise it when objecting to the magistrate judge's recommendations. *See Duffield*, 545 F.3d at 1237.

9

Ct. 2305, 2326 (2018) (stating that "when a finding of fact is based on the application of an incorrect burden of proof, the finding cannot stand").

Those disputed matters relate solely to the police officers' ability to see the passenger between the time that she exited and reentered the SUV.[3] If the eventual pat-down search of Mr. Torres was permissible under the remaining, undisputed facts, the district judge's skewed perspective of the evidence would be harmless. If those undisputed facts did not permit the pat-down search, the district judge's error may have been prejudicial. So we must consider the justification for the pat-down search.

**4.    The pat-down search did not violate the Fourth Amendment.**

In addressing the justification for the pat-down search, the parties present four issues:

1.    whether the police could stop the SUV based on suspicion of a drug transaction or observation of a parking violation,

2.    whether the police unreasonably extended the traffic stop by questioning the passenger about her identity,

3.    whether Mr. Torres consented to a search of the SUV, and

4.    whether reasonable suspicion existed to believe that Mr. Torres was armed and dangerous.

We agree with the government that the stop of the SUV was permissible, that the police officers did not unreasonably extend the traffic

---

[3]    The district judge also overruled three of Mr. Torres's objections (11–13) on legal grounds. These rulings weren't affected by the district judge's erroneous perspective on the evidence.

10

stop, and that the officers had reasonable suspicion to believe that Mr. Torres was armed and dangerous. But we need not address Mr. Torres's challenge to the voluntariness of his consent to search the SUV: Irrespective of consent, the officers discovered the handgun through a reasonable pat-down search conducted during a lawful detention.

### A. Despite our precedent, we may decline to view the evidence favorably to the government.

Mr. Torres acknowledges that our circuit precedent directs us to view the evidence in the light most favorable to the prevailing party, which is the government. *See, e.g.*, *United States v. Gaines*, 918 F.3d 793, 796 n.3 (10th Cir. 2019); *see also* Part 3(C), above. But he questions the correctness of this precedent, pointing to *Ornelas v. United States*, where the Supreme Court has instructed federal appellate courts to apply the clear-error standard when reviewing rulings on motions to suppress. 517 U.S. 690, 699 & 694 n.3 (1996). In our view, however, the *Ornelas* Court's reasoning is consistent with our circuit precedent; the *Ornelas* Court directed federal appellate courts to give "deference" and "due weight" to "inferences drawn . . . by resident judges and local law enforcement officers" because of their expertise in their communities. *Id.* at 699. Because *Ornelas* does not undermine our precedents, we must ordinarily

follow them and view the evidence favorably to the government. *See Gaines*, 918 F.3d at 796 n.3.

Here, however, the district court ruled for the government based on a skewed view of the evidence. *See* Part 3(C), above. Given this error, we apply the undisputed facts and inferences in conducting de novo review of the district judge's ultimate decision on the existence of reasonable suspicion, the existence of probable cause, and the satisfaction of the Fourth Amendment. *See United States v. Ybarra Cruz*, 982 F.3d 1284, 1291 (10th Cir. 2020) (taking a similar approach when the district court erroneously viewed the evidence favorably to the government); *Ornelas*, 517 U.S. at 699 (conducting de novo review on reasonable suspicion and probable cause); *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017) (conducting de novo review on compliance with the Fourth Amendment).

**B.     The traffic stop did not violate the Fourth Amendment.**

Mr. Torres contends that the traffic stop violated the Fourth Amendment for three reasons:

1.     The police lacked reasonable suspicion to believe that Mr. Torres and the passenger had engaged in a drug transaction.

2.     Officer Krause shouldn't have concluded that the SUV being stopped was the same SUV that he had seen earlier.

3. The completed parking violation did not justify the traffic stop.[4]

We disregard the first contention and reject the second and third contentions.

**(1) The Fourth Amendment permitted the traffic stop if the officers had probable cause to find a parking violation.**

Under the Fourth Amendment, searches and seizures must be reasonable. *See United States v. Gomez-Arzate*, 981 F.3d 832, 838 (10th Cir. 2020). A traffic stop is reasonable if it is "justified at its inception" and the officers' actions during the stop are "reasonably related in scope to the mission of the stop itself." *United States v. Mayville*, 955 F.3d 825, 829 (10th Cir. 2020) (quoting *United States v. Cone*, 868 F.3d 1150, 1152 (10th Cir. 2017)).

To justify the traffic stop "at its inception," the police need either reasonable suspicion or probable cause. *United States v. Cervine*, 347 F.3d 865, 869 n.2 (10th Cir. 2003). Suspicion is reasonable if the police have "'a particularized and objective basis for suspecting the particular person stopped' of breaking the law." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (quoting *Navarette v. California*, 572 U.S. 393, 396 (2014)). Probable cause exists if the facts and circumstances are "'sufficient to

---

[4] Mr. Torres also denies consent to search the vehicle. But because the officers discovered the handgun through a reasonable pat-down search during a lawful detention, we need not address Mr. Torres's challenge to the voluntariness of his consent. *See* p. 11, above.

warrant a prudent man in believing that the [suspect] had committed or was committing a[] [criminal] offense.'" *Culver v. Armstrong*, 832 F.3d 1213, 1218 (10th Cir. 2016) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

> **(2)  Officer Krause had probable cause to believe that the white SUV was the vehicle that had been illegally parked.**

Mr. Torres doesn't deny probable cause to believe that a white SUV was illegally parked; he instead challenges the basis for Officer Krause to believe that he spotted the same SUV that had been illegally parked. This challenge requires us to determine whether the police had probable cause to believe that Mr. Torres was driving the same vehicle that Officer Krause had earlier seen.

In contesting the existence of reasonable suspicion, Mr. Torres relies on two opinions involving substantial gaps in time and distance between the initial observation of a vehicle and the eventual traffic stop:

1.  *United States v. Martinez*, 910 F.3d 1309, 1316 (10th Cir. 2018) (more than 41 minutes, 130 miles)

2.  *United States v. Jones*, 998 F.2d 883, 884 (10th Cir. 1993) (5 minutes, 1–1/2 miles)

In *Martinez* and *Jones*, we held that the traffic stops were too far away from the last sightings of the vehicles. *Martinez*, 910 F.3d at 1316; *Jones*, 998 F.2d at 884. Mr. Torres urges the same result here.

We reject this argument. Officer Krause testified that

- he had lost sight of the white SUV for less than a block and

14

- he had no doubt that the white SUV being stopped was the SUV that had been illegally parked.

When told where the SUV had turned, Officer Krause was only a block away and saw no other white SUVs.

In light of this testimony, we conclude that Officer Krause had not only reasonable suspicion, but also probable cause to believe that he had seen the same vehicle that had been illegally parked.

**(3)    The district judge did not plainly err by justifying the traffic stop based on a completed parking violation.**

Mr. Torres contends that the officers violated the Fourth Amendment by stopping him to investigate reasonable suspicion of a completed misdemeanor. We reject this argument.

Mr. Torres did not make this argument to the district court. He did argue that the officers had "used the parking violation as a ruse"[5] and urged the magistrate judge to find that he had not committed a moving traffic violation. R. at 255, 307. But he did not question the traffic stop based on his completion of a misdemeanor.

---

[5]    The officers here were obviously concerned with the possibility of a drug crime, not a parking violation. But the officers' motivation doesn't matter; if the traffic stop were justified, it would be permissible even if the officers had stopped the white SUV solely to investigate a possible drug crime. *See United States v. Polly*, 630 F.3d 991, 997 (10th Cir. 2011) (stating that a traffic stop was objectively justified even if it had been intended to investigate drug trafficking).

Because Mr. Torres did not make this argument in district court, he could prevail only if the district judge had plainly erred. *See United States v. Trujillo*, 960 F.3d 1196, 1201 (10th Cir. 2020). Under this standard, Mr. Torres must show an obvious error. *Id.*

The district court did not make an error, much less one that would have been obvious. When the police have reasonable suspicion of a completed misdemeanor and the police stop the person to investigate that suspicion, we balance "the nature and quality of the intrusion . . . against the importance of the government interest." *United States v. Moran*, 503 F.3d 1135, 1141–42 (10th Cir. 2007) (quoting *United States v. Hensley*, 469 U.S. 221, 226 (1985)). But this balancing test does not apply when the police

- have probable cause to believe that a person has committed a traffic violation and

- stop the person to issue a ticket.

*United States v. Ludwig,* 641 F.3d 1243, 1247 (10th Cir. 2011). So the police can stop a car to issue a ticket for a past parking violation. *See United States v. McGehee*, 672 F.3d 860 (10th Cir. 2012).

The police had probable cause to believe that Mr. Torres had committed a parking violation: Officer Krause saw a white SUV illegally parked. Once it left, Officer Krause quickly saw a white SUV that appeared to be the same vehicle. So Officer Krause had probable cause to stop the

16

vehicle to issue a parking ticket. Given the existence of probable cause, rather than just reasonable suspicion, no balancing was required.

### C. The officers reasonably extended the traffic stop by questioning the passenger about her identity.

Mr. Torres also claims that the officers improperly extended the stop and should have let him leave after they had verified the validity of his license, registration, insurance, and medical marijuana card. At that point, he asserts, detention was no longer reasonably related to the purpose of the traffic stop.

Ordinarily the police would need to let Mr. Torres leave once they issued a ticket for his parking violation. *United States v. Gomez-Arzate*, 981 F.3d 832, 840 (10th Cir. 2020). But once the police approached Mr. Torres's vehicle, they smelled burnt marijuana. So the police had reasonable suspicion to believe that Mr. Torres or his passenger was violating the federal drug laws' prohibition against the possession of marijuana. 21 U.S.C. § 844; 21 U.S.C. § 812(b)(1) & Schedule 1; *see United States v. Nielsen*, 9 F.3d 1487, 1491 (10th Cir. 1993) ("The smell of burnt marijuana" alone "would lead a person of ordinary caution to believe the passenger compartments might contain marijuana.").

Given that suspicion, the officers could ask the passenger about her identity. And the officers did. But the passenger couldn't remember her

17

Social Security number and denied having a driver's license or anything else with her identifying information.

She did give the officers a name and birthdate. But the officers could reasonably continue to question the passenger in light of her lack of identification and the smell of burnt marijuana. *See Florida v. Royer*, 460 U.S. 491, 500 (1983).

Even though the officers directed their questions to the passenger, the resulting suspicions could reasonably extend to Mr. Torres, for "[a] passenger . . . will often be engaged in a common enterprise with the driver." *United States v. Dennison*, 410 F.3d 1203, 1213 (10th Cir. 2005). Given the passenger's fishy answers about her identity, the officers had reasonable suspicion to detain Mr. Torres during the questioning.

**D.    Because the officers reasonably suspected that Mr. Torres was armed and dangerous, the pat-down search did not violate the Fourth Amendment**.

Mr. Torres challenges the pat-down search, which led to discovery of the handgun. To resolve this challenge, we must consider whether the officers had reasonable suspicion to believe that Mr. Torres was armed and dangerous. *United States v. Hammond*, 890 F.3d 901, 905 (10th Cir. 2018). A pat-down search is justified when "a reasonably prudent [officer] in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Salas-Garcia*, 698 F.3d 1242, 1248 (10th Cir. 2012) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

18

Mr. Torres contends that the officers lacked reasonable suspicion for the pat-down search. He asserts that the parking violation and alleged drug activity were non-violent, that he was friendly and cooperative throughout the encounter, that he was not wearing gang colors, that he did not make any furtive movements, that the officers knew that he had physical limitations, that he was outnumbered, and that the traffic stop occurred in the middle of the day in a residential neighborhood.

As Mr. Torres argues, reasonable suspicion does not arise solely from his criminal record or gang affiliation. *United States v. Hammond*, 890 F.3d 901, 906–07 (10th Cir. 2018). "But where . . . the circumstances of the stop itself interact with an individual's criminal history to trigger an officer's suspicions, that criminal history becomes critically relevant for *Terry*-purposes." *Id.* at 907.

The police knew not only that Mr. Torres had been convicted of murder but also that he had been shot by gang members months earlier. Though Mr. Torres had been a victim and unarmed in the prior shooting, the police were aware of his failure to cooperate in the investigation. Given Mr. Torres's lack of cooperation, the police could reasonably infer that he would protect himself by carrying a gun.

Before the police conducted the pat-down search, they also learned that Mr. Torres had just driven the passenger to an apartment where she

19

tried to buy heroin. And the officers knew that the SUV smelled of burnt marijuana.

Once the passenger admitted trying to buy heroin, the police could reasonably infer that Mr. Torres was involved in an attempted drug transaction. This involvement contributed to reasonable suspicion that Mr. Torres was armed. *See United States v. Albert*, 579 F.3d 1188, 1195 (10th Cir. 2009).

Mr. Torres points out that the conversation was pleasant. For example, Mr. Torres expressed thanks for another police officer's help in the prior shooting. But the pleasant tone didn't eliminate the risk that Mr. Torres might resort to violence to prevent a pat-down search. *See Terry v. Ohio*, 392 U.S. 1, 13 (1968) (stating that some "hostile confrontations . . . begin in a friendly enough manner, only to take a different turn upon the injection of some unexpected element into the conversation"). As a result, the pleasant conversation did not prevent reasonable suspicion that Mr. Torres would pull a gun. *See United States v. Barnett*, 505 F.3d 637, 638–40 (7th Cir. 2007) (reversing the grant of a motion to suppress in part because the suspect's cordial, cooperative manner did not prevent reasonable suspicion that he was armed and dangerous); *see also United States v. Holmes*, 376 F.3d 270, 278 (4th Cir. 2004) (stating that "a suspect's cooperation with police officers during a *Terry* stop does not, by

itself, extinguish concerns that the police may harbor about that suspect's dangerousness").

Given the evidence, the police had reasonable suspicion to consider Mr. Torres armed and dangerous. He had just driven the passenger to a place where she had tried to buy heroin, the vehicle smelled of burnt marijuana, he had a murder conviction, he was believed to be a gang member, and he had recently refused to cooperate with the police after being shot by a gang member. Given the reasonableness of suspicion that Mr. Torres was armed and dangerous, the pat-down search did not violate the Fourth Amendment.

**5.     We affirm the denial of Mr. Torres's motion to suppress.**

The police could reasonably stop the white SUV. Officer Krause had probable cause to issue a ticket for illegal parking. When Officer Krause approached the SUV, however, he smelled burnt marijuana. The smell triggered reasonable suspicion for the questioning of Mr. Torres and the passenger.

When the passenger was questioned, she generated further suspicion by lying about her identity. As officers tried to learn her true identity, the police reasonably suspected that Mr. Torres was armed and dangerous. The passenger had admittedly just tried to buy heroin, and the police believed that Mr. Torres was a gang member, knew that he had been convicted of

21

murder, and were aware that he had refused to cooperate after recently being shot in a gang-related shooting.

With reasonable suspicion, the police could lawfully conduct a pat-down search; and that search led to discovery of the handgun. Given the reasonableness of the suspicion for the pat-down search, the district court did not err in denying Mr. Torres's motion to suppress.