**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EPIFANIO MURILLO-GONZALEZ,

    Defendant - Appellant.

No. 22-2123
(D.C. No. 1:19-CR-00768-JCH-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **EBEL**, and **CARSON**, Circuit Judges.
_____

The government indicted Defendant Epifanio Murillo-Gonzalez on one count of illegal reentry of a removed alien in violation of 8 U.S.C. §§ 1326(a) and (b). Defendant moved to suppress his oral statements, written statements, and Alien File ("A-File"). The district court denied his motion. Defendant then pleaded guilty to the indictment, preserving his right to appeal the denial of his motion to suppress. Defendant appeals. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Armed with an administrative warrant, deportation officers from the Department of Homeland Security ("DHS") planned to arrest Jose Torres-Mena for illegally residing in the United States. Officers surveilled Torres-Mena's suspected residence and observed Defendant pull into the driveway. Torres-Mena exited the house and climbed into Defendant's truck. Defendant and Torres-Mena then drove off.

After driving a few blocks, officers stopped the truck to serve the warrant on Torres-Mena. As two officers detained Torres-Mena, Officer Jorge Casanova spoke with Defendant. Officer Casanova first explained in English the purpose of the stop but switched to Spanish after realizing that Defendant did not understand English. Officer Casanova requested that Defendant step out of the truck and produce his driving documents. Defendant provided his New Mexico driver's license and a Mexican consular identification. Officer Casanova asked where Defendant was from, and Defendant said that he was from Mexico. Officer Casanova then asked him if he had authority to be in the United States, and Defendant stated he did not. Officer Casanova also asked if Defendant had committed any crimes while in the United States, and Defendant answered that he previously committed a drug offense.

Officer Casanova ran Defendant's identification documents and learned that DHS had earlier deported Defendant for a drug crime and unlawful presence in the country. Officer Casanova arrested Defendant. Officer Casanova advised Defendant

2

to remain silent and told Defendant he would <u>Mirandize</u> him later at the DHS station pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).[1]

Once at the DHS station, Officer Casanova took Defendant's fingerprints and entered them into DHS's computerized systems. The fingerprint search revealed that Defendant had an A-File with DHS, including a final order for removal from 1990. Afterward, officers provided Defendant his <u>Miranda</u> warnings, and Defendant made additional statements.

Defendant moved to suppress his oral statements, written statements, and A-File documents, asserting officers violated his rights under the Fourth and Fifth Amendments. The district court denied Defendant's motion.

When reviewing a district court's denial of a motion to suppress, we review questions of law de novo and factual findings for clear error. <u>United States v. Madden</u>, 682 F.3d 920, 924–25 (10th Cir. 2012) (citing <u>United States v. Kimoana</u>, 383 F.3d 1215, 1220 (10th Cir. 2004)). We view "the evidence in the light most favorable to the government." <u>Id.</u>

## II.

Defendant asserts that the district court erred in denying his motion to suppress because (1) the extra-judicial administrative warrant did not authorize DHS officers to stop Defendant's truck; (2) the district court legally erred in relying on precedent addressing traffic stops; and (3) the officers violated Defendant's Fifth Amendment

---

[1] Defendant made no further incriminating statements until after officers provided him with <u>Miranda</u> warnings.

right against self-incrimination.  After reviewing the record, we conclude Defendant waived the first two issues and that the officers did not violate Defendant's Fifth Amendment right against self-incrimination.

1.

Defendant argues that the district court should have suppressed any information leading to his conviction because the extra-judicial administrative warrant did not authorize DHS officers to stop Defendant's truck.  The government argues that Defendant waived this argument by first not preserving it before the district court and by failing to argue for plain error on appeal.

Generally, absent a clear intention to waive an issue, a party who fails to raise a legal argument before the district court forfeits it.  Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1128 (10th Cir. 2011) (first citing United States v. Olano, 507 U.S. 725, 731 (1993); and then quoting United States v. Zubia–Torres, 550 F.3d 1202, 1205 (10th Cir. 2008)) ("[F]orfeiture comes about through neglect.").  We will entertain forfeited arguments on appeal if, in its opening brief, the party argues for plain error.  Id. (citing Zubia–Torres, 550 F.3d at 1205); but see United States v. Leffler, 942 F.3d 1192, 1200 (10th Cir. 2019) (citing United States v. Courtney, 816 F.3d 681 (10th Cir. 2016)) (holding that we have discretion to consider plain error arguments raised for the first time in a reply brief for criminal defendants).  But if the party fails to explain how the argument survives plain error review, the party waives the argument entirely.  Richison, 634 F.3d at 1130–31 (citing McKissick v. Yuen, 618 F.3d 1177, 1189 (10th Cir. 2010)).  To proceed otherwise, "without the benefit of

4

the adversarial process[] and without any opportunity for the adversely affected party to be heard on the question" would "run the risk of an improvident or ill-advised opinion." McKissick, 618 F.3d at 1189 (citing Herrera v. City of Albuquerque, 589 F.3d 1064, 1075 (10th Cir. 2009); United States v. Solomon, 399 F.3d 1231, 1238 (10th Cir. 2005); Hill v. Kemp, 478 F.3d 1236, 1251 (10th Cir. 2007)).

Defendant argues that he preserved this issue before the district court because he asserted the following in his motion to suppress: 1) "The [G]overnment provides no justification for its seizure of [Defendant];" 2) "The deliberate use by the Government of an administrative warrant for the purpose of gathering evidence in a criminal case must meet stern resistance by the courts;" 3) "[Officers] unlawfully exploited the administrative warrant for criminal purposes;" 4) "Even though the officers had a lawful arrest warrant for Mr. Torres-Mena, they were not justified in extending their authority to also seize [Defendant];" 5) "[O]fficers unlawfully arrested [Defendant] without a warrant, and not pursuant to a warrant exception;" 6) "The arrest warrant for Mr. Torres-Mena was administrative in nature and therefore not based on probable cause;" and 7) "By waiting to go after Mr. Torres-Mena until he was in [Defendant's] vehicle, agents unnecessarily involved Defendant in their arrest of Mr. Torres-Mena, and in so doing unjustifiably trespassed on his Fourth Amendment right to privacy." But these statements never alerted the district court to the issue Defendant asserts on appeal: that an administrative warrant did not provide officers with the authority necessary to stop Defendant's truck. Instead, as the record clearly reflects, Defendant made these statements to support his arguments that

5

(1) Defendant's seizure fell outside the scope of Torres–Mena's arrest in violation of Terry v. Ohio, 392 U.S. 1 (1968), and (2) officers used Torres–Mena's arrest as pretext to stop Defendant and immediately ask him about his immigration status. At no point in his motion to suppress or reply brief before the district court did Defendant argue that DHS officers lacked authority to stop the vehicle based on the extra-judicial warrant. We will not indulge in Defendant's request to use cherry-picked, general, and conclusory statements to support preservation, especially when Defendant made such statements to support different arguments. See, e.g., United States v. Isabella, 918 F.3d 816, 845 (10th Cir. 2019) (quoting Collins v. Diversified Consultants, Inc., 754 Fed. App'x. 714, 718 (10th Cir. 2018)) (discussing that a "too general and conclusory" argument does not warrant review).

2.

Defendant next argues that the district court erred in relying on precedent addressing traffic stops when it denied his motion to suppress. Defendant contends that because the DHS officers lacked authority to stop vehicles for traffic violations, a traffic stop did not occur. As a result, our precedent addressing traffic stops does not apply and, therefore, officers needed separate reasonable suspicion to seize Defendant.[2] Once again, we do not reach this argument because Defendant failed to preserve it before the district court and did not argue for plain error.

---

[2] Defendant's brief may also be read as arguing that officers needed separate reasonable suspicion to seize Defendant because the purpose of the stop ended when officers arrested Torres-Mena and questioning of Defendant occurred after Torres-

6

Defendant failed to argue in his motion or his reply brief before the district court that our precedent addressing traffic stops does not apply when DHS officers stop vehicles.  Instead, Defendant conceded that the stop fell within a Terry stop—an investigative detention which includes a "detention of individuals in vehicles." United States v. Samilton, 56 F.4th 820, 826 (10th Cir. 2022).  Indeed, Defendant cited the traffic stop standard set in Rodriguez v. United States, 575 U.S. 348 (2015), to argue that the Officer Casanova's request for Defendant's documents unreasonably prolonged the traffic stop.  Defendant also described the stop as "not an ordinary traffic stop," indicating that Defendant still considered it a traffic stop, though not an ordinary one.  Thus, Defendant never notified the district court of the argument he now asserts—that traffic stop precedent is inapplicable because DHS officers had no authority to make a traffic stop.

We recognize that Defendant argued in his reply brief before the district court that officers had no authority to ask for Defendant's license, registration, and proof of insurance.  But Defendant made that argument in the context of whether requesting the documents prolonged the traffic stop.  On appeal, Defendant now argues that because DHS officers lack authority to stop a vehicle for traffic violations, we cannot

---

Mena's arrest.  But the district court found that the questioning occurred *during* the process of arresting Torres-Mena, not after, Defendant did not argue that the district court clearly erred in its factual finding.  So, to the extent Defendant makes this argument, we need not reach it.  United States v. Pickel, 863 F.3d 1240, 1259 (10th Cir. 2017) (citing Silverton Snowmobile Club v. U.S. Forest Serv., 433 F.3d 772 783 (10th Cir. 2006)) (holding the appellant waives the issue when he fails to raise it in the opening brief).

rely on precedent addressing traffic stops and officers needed separate reasonable suspicion to seize Defendant. For the same reasons discussed above, we decline to review it for the first time on appeal.

3.

Defendant finally contends that the district court erred in finding that officers did not violate Defendant's Fifth Amendment right against self-incrimination when officers failed to provide Miranda warnings before questioning about Defendant's immigration status. We disagree.

The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. To ensure procedural safeguards that secure an individual's Fifth Amendment privilege against self-incrimination, law enforcement must provide Miranda warnings to an individual in a "custodial interrogation." United States v. Chee, 514 F.3d 1106, 1112 (2008) (citing Miranda, 384 U.S. at 444). "An individual is in custody when a reasonable person in the suspect's position would understand his or her situation as 'the functional equivalent of formal arrest.'" United States v. Cortez, 965 F.3d 827, 840 (10th Cir. 2020) (quoting United States v. Revels, 510 F.3d 1269, 1273 (10th Cir. 2007)). We review this inquiry objectively, considering the totality of the circumstances. Id. (citing Revels, 510 F.3d at 1275). We consider, *inter alia*: "(1) whether the circumstances demonstrated a police-dominated atmosphere; (2) whether the nature and length of the officers' questioning was accusatory or coercive; and (3) whether the police made [the individual] aware that [he or] she was free to refrain from answering questions, or to otherwise end the interview."

8

Revels, 510 F.3d at 1275 (citing United States v. Griffin, 7 F.3d 1512, 1518–19 (10th Cir. 1993)).

Defendant first argues that the district court should have suppressed his roadside statements because they occurred prior to Defendant receiving his Miranda warnings. But investigatory detentions, like the stop of Defendant's truck, "generally fall short of placing the detainee in custody." Cortez, 965 F.3d at 841; United States v. Eckhart, 536 F.3d 1263, 1275 (10th Cir. 2009) (holding that a valid Terry stop generally does not require Miranda warnings); but see Berkemer v. McCarty, 468 U.S. 420, 440 (1984) (holding that if the treatment "renders [the motorist] 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda."). And Officer Casanova's brief questioning with a non-threatening tone did not create an accusatory or coercive environment. See Eckhart, 569 F.3d at 1276 (holding no coercive environment existed when officers never handcuffed defendant, placed defendant in police car, or drew weapons on defendant); Chee, 514 F.3d at 1114 (quoting Miranda, 384 U.S. at 444; and then citing Berkemer, 468 U.S. at 442) (holding defendant was not in custody "when tone remained calm and conversational"); United States v. Jones, 523 F.3d 1235, 1238, 1240–41 (10th Cir. 2008) (holding defendant was not in custody during a forty-five-minute conversation in a police officer's vehicle when officer told defendant she was free to leave). In fact, Officer Casanova switched to Spanish to help Defendant understand and asked only a few questions related to his identity and immigration status. United States v. Perdue, 8 F.3d 1455, 1464 (10th Cir. 1993) (citing Berkemer, 468 U.S. at

9

439) (discussing how we envision Terry stops to include a few questions about identity and the suspicious circumstances).

Defendant maintains that suppression is necessary because questions about Defendant's immigration status did not relate to the stop. But this position lacks merit because questioning Defendant's immigration status does not in itself create a custodial environment. Officer Casanova's questions remained brief, non-threatening, and occurred in daylight on a public neighborhood road. See United States v. Goebel, 959 F.3d 1259, 1269 (10th Cir. 2020) (holding defendant was not in custody when officer engaged Defendant in brief conversation on a public sidewalk). So Officer Casanova's questions did not create an accusatory or coercive environment, nor do such questions support the conclusion that Defendant was in custody. See United States v. Massie, 65 F.3d 843, 849 (10th Cir. 1995) ("We further conclude the agents' continued detention and questioning of Defendants did not exceed the confines of a routine checkpoint stop. The agents' questioning lasted only eight to eleven minutes . . ."); United States v. Sukiz–Grado, 22 F.3d 1006, 1008–09 (10th Cir. 1994) ("The questions that the agent asked [the defendant] during his two-minute detention at the primary inspection area clearly fall within the ambit of routine inquiry or were justified by the suspicious circumstances observed by the agent.").

Defendant also asserts that the district court erred because Officer Casanova created a custodial atmosphere by asking Defendant to exit his truck and not informing Defendant that he could terminate the encounter. We reject this argument as well because the stop lacked a police-dominated atmosphere. Defendant voluntarily left the

truck, and such voluntary action does not establish police domination. See United States v. Lamy, 521 F.3d 1257, 1264 (10th Cir. 2008) (citing California v. Beheler, 463 U.S. 1121, 1122–23 (1983)) (holding that the defendant's voluntary decision to accompany officers into the police car does not establish police domination). While four officers remained present during the encounter, only Officer Casanova questioned Defendant. The other two officers arrested Torres-Mena, and the last officer observed. See, e.g., id. at 1263 (citing United States v. Erving L., 147 F.3d 1240, 1247 (1998); Revels, 510 F.3d at 1275) (holding that two officers in a common area of the defendant's home did not create a police-dominated atmosphere). Considering the totality of the circumstances, no reasonable person would understand this encounter as the "functional equivalent of a formal arrest." See Revels, 510 F.3d at 1273 (quoting Berkemer, 468 U.S. at 442). So Officer Casanova did not violate Defendant's rights by briefly questioning him prior to administering the Miranda warning.

Defendant next contends that even if the roadside statements did not require Miranda warnings, the district court erred in refusing to suppress Defendant's statements at the DHS station in violation of Missouri v. Seibert, 542 U.S. 600 (2004). We disagree. Seibert involved:

> a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession. Although such a statement is generally inadmissible, since take in violation of Miranda v. Arizona, 384 U.S. 436

(1966), the interrogating officer follows it with <u>Miranda</u> warnings and then leads the suspect to cover the same ground a second time.

<u>Id.</u> at 604.  The idea behind such a protocol is, ostensibly, to coerce a statement in violation of <u>Miranda</u> and to later sanitize the violation by obtaining the second statement after providing the required warning.  <u>Id.</u> at 617.  The Supreme Court, in a plurality opinion, required suppression of the second post-<u>Miranda</u> warning statements.  <u>Id.</u>

Interpreting <u>Siebert</u>, we have been clear that the principles of the case do not apply where the second statement does not follow a statement obtained in violation of <u>Miranda</u>. <u>United States v. Guillen</u>, 995 F.3d 1095, 1121 (10th Cir. 2021) (citing <u>Cortez</u>, 965 F.3d at 840) (holding that we need not go further in the <u>Seibert</u> analysis when the initial statement was not obtained in violation of <u>Miranda</u>); <u>United States v. Courtney</u>, 463 F.3d 333, 336 (5th Cir. 2006) ("<u>Seibert</u> only applies if the first statements were obtained in violation of <u>Miranda.</u>").  Defendant finds himself in this exact posture.  Although Defendant made a second incriminating statement to officers, his first incriminating statement was not obtained in violation of <u>Miranda</u>.  For this reason, under our established precedent, his argument is without merit.

For these reasons, officers did not violate Defendant's Fifth Amendment right against self-incrimination.  We AFFIRM the district court's judgment.

Entered for the Court

Joel M. Carson III
Circuit Judge

12